IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 23-CR-204-MIS |
| ) | |
| ) | |
| **TRAPPER KILLSMANY,** ) | |
| a.k.a. "David Goldsmith," ) | |
| ) | |
| **Defendant.** | |

**UNITED STATES OF AMERICA'S**
**BRIEF IN SUPPORT OF DETENTION**

Trapper Killsmany, also known as David Goldsmith, is a serial filer of fraudulent liens against federal employees in retaliation for the performance of their official duties. By way of background, the tactic of using liens as a mechanism of reprisal against public officials is commonly referred to as "paper terrorism." Such liens have the potential to adversely impact the victim's credit score and impede the victim's ability to engage in routine financial transactions such as securing a loan or refinancing a mortgage. To date, Killsmany has filed nearly one billion dollars in false and fraudulent liens against federal employees. Killsmany is currently charged with one count of retaliating against a federal employee by false claim in violation of 18 U.S.C. § 1521. As explained below, Killsmany presents both a danger to the community and a risk of non-appearance. Killsmany should be detained pending trial.

I. **BACKGROUND**

On February 22, 2023, a federal grand jury indicted Defendant Trapper Killsmany for retaliating against a federal employee by false claim in violation of 18 U.S.C. § 1521. Specifically,

the indictment alleges that Killsmany filed a false and fraudulent lien in Catron County, New Mexico, against the real and personal property of a federal employee, John Doe, in the amount of $20 million dollars. The FBI arrested Killsmany on February 24, 2023, in Catron County. On February 27, 2023, the United States moved to detain Killsmany, and moved for a detention hearing, which has been set for March 3, 2023. In advance of that hearing, the United States files this brief in support of detention, and respectfully requests that Killsmany be detained pending trial in this matter.

**II.   LAW REGARDING PRE-TRIAL DETENTION**

The Bail Reform Act "establishes a two-step process for detaining an individual before trial." *United States v. Ailon-Ailon*, 875 F.3d 1334, 1336 (10th Cir. 2017) (per curiam). At step one, the court must decide the "threshold" question whether 18 U.S.C. § 3142(f) authorizes detention, *see Ailon-Ailon*, 875 F.3d at 1337, such as where the "case...involves...a serious risk that [the defendant] will flee," 18 U.S.C. § 3142(f)(2)(A). "If the court determines that there is such a risk, the government must prove at the second step" that no "'condition or combination of conditions' ... 'will reasonably assure the [defendant's] appearance ... as required [as well as] the safety of any other person and the community.'" *Ailon-Ailon*, 875 F.3d at 1336 (quoting 18 U.S.C. § 3142(f)). Even absent a flight risk, danger to the community alone is a sufficient reason to order pretrial detention. *United States v. Salerno*, 481 U.S. 739, 755 (1987).

To determine whether there are conditions that can reasonably assure Defendant's appearance at trial and the safety of the community, the Court shall consider:

(1)   the nature and circumstances of the crime charged;
(2)   the weight of the evidence against the defendant;
(3)   the history and characteristics of the defendant, including family ties, employment, financial resources, community ties, drug or alcohol abuse history, and past conduct; and

(4)     the nature and seriousness of the danger to the community or to an individual that would be posed by release.

*See* 18 U.S.C. § 3142(g).

When asserting that there is a risk the defendant will not appear, the Government bears the burden of proving that no set of conditions can reasonably assure a defendant's appearance, but only by a preponderance of the evidence. *See United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003). However, the government must prove by clear and convincing evidence that the defendant is danger to the community to justify pretrial detention. *See id*. If the Court determines that either standard is satisfied, it "shall order the detention of the [defendant] before trial." 18 U.S.C. § 3142(e)(1); *see also United States v. Gonzalez-Sierra*, 2021 WL 6050385, *1 (D.N.M. Dec. 21, 2021) (unpublished). A detention order must include "written findings of fact and a written statement of the reasons for the detention." 18 U.S.C. § 3142(i)(1); *see also* Fed. R. App. P. 9(a)(1); *Cisneros*, 328 F.3d at 617.

### III.   ANALYSIS

The defendant is a danger to the community, and he is also a risk of non-appearance. As such, there are no conditions, nor a combination of conditions, that will adequately ensure the safety of the community and the presence of the defendant as required. *See* 18 U.S.C. § 3142(g). Various factors from Section 3142 counsel against releasing Defendant from custody prior to trial.

### A.   Nature and circumstances of the offenses.

Killsmany has been charged with violating 18 U.S.C. § 1521 which makes it unlawful

> to file[ ], attempt[ ] to file, or conspire[ ] to file, in any public record or in any private record which is generally available to the public, any false lien or encumbrance against the real or personal property of an individual described in section 1114, on account of the performance of official duties by that individual, knowing or having reason to know that such lien or encumbrance was false or contains materially false, fictitious, or fraudulent statement or representation.

Starting in 2014, Killsmany filed fraudulent liens in Alaska claiming seven federal employees owed him $950,000,000.00 in damages.  Killsmany was not criminally charged for filing these fraudulent liens, but the United States sued Killsmany and obtained a default judgment in federal court which prohibited him from filing liens without prior court approval.  Despite that prohibition, Killsmany filed another fraudulent lien on November 28, 2022, in Catron County, New Mexico.  This lien was in the amount of $20,000,000.00 and listed the same set of federal employees, including John Doe, as the previous Alaska liens.  Killsmany had the notice of lien notarized and paid $25.00 to file it with the Catron County Clerk.  If convicted, Defendant faces up to ten years of imprisonment; Defendant has an incentive to flee this jurisdiction in order to avoid such a sentence. This factor thus counsels in favor of detention.

  **B.**  **The weight of the evidence.**

The weight of the evidence is significant. On November 28, 2022, at 8:38 a.m., in Catron County, New Mexico, Killsmany paid $25.00 to file a false notice of lien in the amount of $20,000,000.00 with the Catron County Clerk's Office. The lien is false in that the listed debtors, including John Doe, have absolutely no financial relationship with Killsmany and therefore have no debt or other obligation owed to Killsmany.  At trial, John Doe would testify about his involvement in the termination of certain benefits that Killsmany was receiving from the Social Security Administration, as well as his belief that Killsmany's fraudulent liens were filed in retaliation for the denial of those benefits.  Killsmany also operates a "Truth for Trapper Killsmany" Facebook page on which he unambiguously states that the purpose of the liens is to expose the frauds and criminal activities by government employees.  A document posted to the "Truth for Trapper Killsmany" Facebook page states that Killsmany's only known enemies are listed in his "criminal complaints and matured and uncontested commercial liens."  At trial, the

United States would introduce evidence that Killsmany had been previously enjoined by a United States District Court in Alaska from filing liens without first obtaining leave of court. As a result, Killsmany knew or had reason to know that such liens, particularly a lien listing the same set of federal employees as previous liens, was false, fictitious, and fraudulent. Thus, the weight of the evidence is strong and this factor favors detention.

### C.   Defendant's history and characteristics.[1]

Although Killsmany has only one felony conviction on his record, his 2012 assault conviction is of substantial concern. Killsmany's 2012 conviction stems from an incident where he pointed a loaded shotgun at Alaska State Troopers. Prior to entering into a plea agreement and pleading guilty to Assault (third degree), Killsmany was charged with, among other things, attempted murder in the first degree, three counts of felony assault, and one count of misdemeanor resisting or interfering with arrest by force. Killsmany was ultimately sentenced to time served, a 20-month suspended sentence, and two years' probation. Under Alaska law, Assault (third degree) is punishable by a term of imprisonment of up to five years.

In August 2022, the Federal Bureau of Investigation ("FBI") received information that Killsmany may be in possession of multiple firearms and had made statements expressing a willingness to use firearms and "shoot it out" with law enforcement officials. This information was received after the Catron County Sheriff's Office ("CCSO") responded to a domestic incident at Killsmany's residence. During that incident, the reporting party called 911 and alleged that Killsmany pushed her against a door and tried to hit her. The reporting party also stated that she felt unsafe because Killsmany had guns. Around the same time as the reporting party's 911 call,

---

[1] The United States notes that, although Killsmany was interviewed by Pretrial Services on February 27, 2023, the information provided by Killsmany is entirely unverified. Additionally, no suitable third-party custodian was identified in the Pretrial Services Report.

5

Killsmany also called 911 and told dispatchers that he needed assistance moving his "ex-girlfriend" off the property and made statements attempting to undermine the credibility of the reporting party. Killsmany's son also called 911 and told dispatch that the gun safe on the property belonged to him and that dispatch should not believe anything the reporting party was alleging. Shortly thereafter, two other friends of Killsmany called 911 to vouch for Killsmany and to discredit the reporting party.

After Killsmany was arrested on February 24, 2023, the FBI executed a search warrant at his residence. There, the FBI seized approximately 32 firearms, including an AR-15, handguns, hunting rifles, and hundreds of rounds of ammunition. *See* Exhibit 1. The majority of the firearms were located inside of a gun safe; however, numerous frames and receivers[2], in addition to hundreds of rounds of ammunition, were located outside of the safe.

Because Killsmany is a previously convicted felon, it is unlawful for him to possess firearms or ammunition. As a result, the United States intends to seek felon in possession of a firearm and ammunition charges against Killsmany in the near future. Such charges likely will increase the potential term of imprisonment that Killsmany faces if convicted. For those reasons, the factor accounting for Killsmany's history and characteristics also weighs in favor of detention.

    **D.**    **Risk of non-appearance and danger.**

Upon information and belief, Killsmany is an individual who harbors sovereign citizen ideology and considers himself to be a "private attorney general." Individuals who subscribe to

---

[2] Under 18 U.S.C. § 921(a)(3), the term "firearm" means "(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; ***(B) the frame or receiver of any such weapon***; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm." (emphasis added).

sovereign citizen ideology do not believe in the legitimacy of the United States federal government and consider themselves beyond the jurisdiction of federal law. That Killsmany subscribes to such ideology seriously calls into question Killsmany's ability to comply with court orders and appear at future court proceedings as required.[3]

As mentioned above, Killsmany has a demonstrated history of disregard for following court orders. In 2014, Killsmany was enjoined by a United States District Court in Alaska from filing liens without first obtaining leave of court. Nonetheless, Killsmany has continued to file fraudulent liens in violation of that court order. The pretrial services report also indicates that Killsmany has a dated conviction for obstructing judicial proceedings for which he received a 60-day jail sentence. In 2011, Killsmany was convicted of the misdemeanor charge of violating a protective order and was sentenced to 10 days in jail (suspended) and one year of probation. That term of probation was revoked in 2012 when Killsmany pointed a loaded shotgun at Alaska State Troopers—an incident which resulted in a felony assault conviction.

The United States also submits that Killsmany presents a risk of danger to a specific individual, *i.e.*, the reporting party of the August 2022 domestic incident. The reporting party repeatedly expressed the sentiment that Killsmany was a threat to her life.

## IV.  CONCLUSION

The defendant should be detained pending trial because there are no conditions that will reasonably assure his appearance at future court proceedings, nor the safety of the community.

**WHEREFORE**, the United States respectfully requests that this honorable Court find the defendant is a flight risk and a danger to the community, that no conditions can reasonably assure

---

[3] Additionally, Killsmany's residence is currently for sale and it is unknown exactly where and when he intends to relocate. This fact is concerning when taking into consideration Killsmany's ties to other states including Michigan, Alaska, Arizona, Missouri, West Virginia, and Maine.

the defendant's future appearance in Court, nor reasonably assure the safety of the community, and Order that the defendant be detained pending the resolution of this case.

ALEXANDER M.M. UBALLEZ
United States Attorney

*Electronically filed 3/3/2023*

RYAN ELLISON
Assistant United States Attorney
200 N. Church Street
Las Cruces, New Mexico 88001
Phone: (575) 323-5250

I HEREBY CERTIFY that on March 3, 2023
I electronically filed the foregoing with the
Clerk of the Court using the CM/ECF electronic
filing system which will send notification to all
counsel of record.

*Electronically filed 3/3/2023*
RYAN ELLISON
Assistant United States Attorney

**GOVERNMENT EXHIBIT 1**

